UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALECIA MOORE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:18 CV 262 CDP |
| | ) |
| BAYER CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Three Missouri plaintiffs joined ninety-five non-Missouri plaintiffs to sue Bayer A.G. and four of its wholly-owned subsidiaries (Bayer Corporation, Bayer Healthcare LLC, Bayer Essure Inc., and Bayer Healthcare Pharmaceuticals Inc.) in Missouri state court. All plaintiffs allege that they suffered personal injuries as a result of being prescribed and implanted with the medical device Essure, a form of permanent female birth control. All of the plaintiffs' claims are brought under Missouri tort law. Defendants removed the case to federal court in part on the basis of diversity jurisdiction – even though five of the plaintiffs share citizenship with Bayer defendants. Bayer argues that this court lacks personal jurisdiction over it regarding the claims of the non-Missouri plaintiffs and that those claims should be dismissed or severed. Plaintiffs urge the court to address subject-matter jurisdiction before personal jurisdiction, and remand the case to state court.

Under this court's discretionary power, I will examine the more straightforward issue of personal jurisdiction before subject-matter jurisdiction. As many judges in this district have found when considering the same issues involving Bayer and Essure in Missouri, the connections between Missouri and the non-Missouri plaintiffs' claims against Bayer are too attenuated for this court to exercise personal jurisdiction over Bayer. *See Hinton v. Bayer Corp.,* No. 4:16-cv-1679 HEA (E.D. Mo. July 27, 2018) (claims of non-Missouri plaintiffs dismissed for lack of personal jurisdiction); *Johnson v. Bayer Corp.*, No. 4:17-cv-2774 JAR (E.D. Mo. Feb. 21, 2018) (same); *Schaffer v. Bayer Corp.*, No. 4:17-cv-1973 JAR (E.D. Mo. Feb. 21, 2018) (same); *McClain v. Bayer Corp.*, 4:17-cv-1534 JCH (E.D. Mo. Feb. 20, 2018) (same); *Jordan v. Bayer Corp.*, 4:17-cv-865 AGF (E.D. Mo. Feb. 13, 2018) (same); *Dyson v. Bayer Corp.*, 4:17-cv-2584 SNLJ (E.D. Mo. Jan. 24, 2018) (same). The claims of the non-Missouri plaintiffs will be dismissed and the case will proceed as to the Missouri plaintiffs only.

## **Background**

Plaintiffs seek to recover damages for injuries they allegedly sustained from using Essure, a permanent birth control device manufactured and sold by the Bayer defendants. Plaintiffs assert fourteen claims including negligence, strict liability, manufacturing defect, fraud, breach of warranties, violation of consumer protection laws, Missouri products liability, violation of the Missouri Merchandising

Practices Act, and punitive damages. Of the ninety-eight plaintiffs, only three allege they are citizens of Missouri and those same three are the only plaintiffs who had the Essure device implanted while in Missouri.

The Bayer Defendants – which are not Missouri citizens – removed the case to this court in part[1] on the basis of diversity jurisdiction. Some of the ninety-five non-Missouri plaintiffs share citizenship with Bayer defendants, thereby defeating this court's diversity jurisdiction. However, Bayer relies on the recent United States Supreme Court decision *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017), to argue that this court lacks personal jurisdiction over it for the claims of the ninety-five non-Missouri plaintiffs; therefore, those claims should be dismissed or severed. Because there would be complete diversity between the three remaining Missouri plaintiffs and all defendants, and because the amount in controversy exceeds $75,000, Bayer contends this court has jurisdiction over the remaining claims. *See* 28 U.S.C. § 1332(a).

Plaintiffs urge this court to address subject-matter jurisdiction before personal jurisdiction and remand this case for lack of complete diversity.

---

[1] Defendants also contend that this court possesses (1) federal question jurisdiction based on the relationship of plaintiffs' claims to the federal regulatory process for the approval of the Essure product and procedure, and (2) diversity jurisdiction under the Class Action Fairness Act when the court considers the four other nearly-identical complaints filed by plaintiffs' counsel on behalf of more than 100 plaintiffs. *See Johnson v. Bayer Corp.*, No. 4:17cv1533RLW (E.D. Mo.) (remanded to state court); *Hinton v. Bayer Corp.*, No. 4:16cv1679HEA (E.D. Mo.) (non-Missouri plaintiffs dismissed for lack of personal jurisdiction); *McClain v. Bayer Corp.*, 4:17cv1534JCH (E.D. Mo.) (same); *Schaffer v. Bayer Corp.*, No. 4:17cv1973JAR (E.D. Mo.) (same).

However, if the court chooses to examine personal jurisdiction first, plaintiffs argue that Bayer has engaged in extensive contacts with Missouri during Essure's development. Unlike defendants in *Bristol-Myers Squibb*, plaintiffs argue that Bayer did develop Essure in Missouri, did create a marketing strategy for Essure in Missouri, and did work on the regulatory approval of Essure in Missouri. ECF No. 20 at 2-3 (citing *Bristol-Myers Squibb*, 137 S.Ct. at 1778).

Missouri was one of eight principal sites in the United States chosen to conduct pre-market clinical trials of Essure. ECF No. 20 at 5-10. Missouri hospitals and physicians were used in these clinical investigations, and the Missouri study results were used to support the FDA approval process of Essure. *Id.* St. Louis was one of eight cities "to create and launch its direct-to-consumer marketing campaign" that was used as the basis for the nationwide marketing of Essure. *Id.* at 15. Plaintiffs argue these connections are sufficient; they have also filed a separate motion seeking jurisdictional discovery to prove the contacts necessary to sustain jurisdiction for the non-Missouri plaintiffs' claims. ECF No. 23.

## **Discussion**

There is no "unyielding jurisdictional hierarchy" concerning the order in which a federal court must consider challenges to personal jurisdiction and subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

In exercising discretion to determine which issue to consider first, courts should consider the interests of judicial economy, weigh the preclusionary effect of ruling on an issue that could travel back and bind the state court, and decide the more straightforward issue first. *Id*. at 585-86. The Supreme Court in *Ruhrgas* acknowledged that "in most instances subject-matter jurisdiction will involve no arduous inquiry" and "[i]n such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Id*. at 587-88. However, a court may first address personal jurisdiction when the personal jurisdiction analysis is simple compared to that of subject-matter jurisdiction. *Id.* at 588; *see also Crawford v. F. Horrman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("[C]ertain threshold questions, such as personal jurisdiction, may be taken up without a finding of subject-matter jurisdiction, provided that the threshold issue is simple when compared with the issue of subject-matter jurisdiction.").

After the decisions of the United States and Missouri Supreme Courts in *Bristol-Myers Squibb* and *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41(Mo. 2017) (en banc), judges in this district have generally held that the issue of personal jurisdiction is more straightforward than subject-matter jurisdiction. *See Jinright v. Johnson & Johnson, Inc.*, No. 4:17-cv-1849 ERW, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017); *Covington v. Janssen Pharm., Inc.*, No. 4:17-cv-1588

SNLJ, 2017 WL 3433611 (E.D. Mo. Aug. 10, 2017); *Turner v. Boehringer Ingelheim Pharm., Inc.*, No. 4:17-cv-1525 AGF, 2017 WL 3310696 (E.D. Mo. Aug. 3, 2017); *Siegfried Boehringer Ingelheim Pharm., Inc.*, No. 4:16-cv-1942 CDP, 2017 WL 2778107 (E.D. Mo. June 27, 2017). Plaintiffs argue that the facts establishing Bayer's connections with the state of Missouri make this case distinguishable from previous rulings. However, many judges in this district that have considered the same issues raised here with Bayer and its Essure device have found personal jurisdiction lacking for the non-Missouri plaintiffs. *See Hinton v. Bayer Corp.,* No. 4:16-cv-1679 HEA (E.D. Mo. July 27, 2018); *Johnson v. Bayer Corp.*, No. 4:17-cv-2774 JAR (E.D. Mo. Feb. 21, 2018); *Schaffer v. Bayer Corp.*, No. 4:17-cv-1973 JAR (E.D. Mo. Feb. 21, 2018); *McClain v. Bayer Corp.*, 4:17-cv-1534 JCH (E.D. Mo. Feb. 20, 2018); *Jordan v. Bayer Corp.*, 4:17-cv-865 AGF (E.D. Mo. Feb. 13, 2018); *Dyson v. Bayer Corp.*, 4:17-cv-2584 SNLJ (E.D. Mo. Jan. 24, 2018); *but see Johnson v. Bayer Corp.*, 4:17-cv-1533 RLW (E.D. Mo. Nov. 29, 2017). This court agrees with the reasoning and rationale of these rulings that found no personal jurisdiction over Bayer as to these claims.

Remanding this case for lack of complete diversity, only to have the case removed again later once the non-Missouri plaintiffs are dismissed, would be a waste of judicial resources. In addition, inquiring into personal jurisdiction first means the court need not decide the joinder issues, which are complicated,

especially in light of *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010). Personal jurisdiction is the more straightforward inquiry. Ruling personal jurisdiction first is in the interests of judicial economy and expeditiousness.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). I must view the evidence in a light most favorable to the plaintiffs and resolve factual conflicts in the plaintiffs' favor; however, plaintiffs carry the burden of proof and that burden does not shift to defendants. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

In order to subject a defendant to a court's personal jurisdiction, due process requires that the defendant have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). Plaintiffs do not argue that this court has general jurisdiction over Bayer, only specific jurisdiction.

Specific, or "conduct-linked," jurisdiction involves suits "arising out of or related to the defendant's contacts with the forum." *Daimler*, 134 S.Ct. at 751;

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For a Missouri court to exercise specific jurisdiction over an out-of-state defendant, two requirements must be met: 1) jurisdiction must be allowed by the Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process. *Viasystems, Inc. v. EBM-Papst St. George Gmbh & Co.*, 646 F.3d 589, 593-94 (8th Cir. 2011). Missouri's long-arm statute authorizes, *inter alia*, personal jurisdiction over corporate defendants who, either in person or through an agent, transact business or commit a tort within the state. Mo. Rev. Stat. § 506.500.1(1), (3).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). In other words, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. at 1122 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Contacts between the plaintiff and the forum state do not satisfy this inquiry. *Id*. The proper focus regarding minimum contacts necessary to create specific jurisdiction is on "the relationship among the defendant, the forum, and the litigation." *Id*. at 1121.

Plaintiffs assert that this court has specific jurisdiction over the Bayer defendants for all plaintiffs' claims. They argue that Bayer's activities in Missouri

fall within the Missouri long-arm statute because its clinical trials constitute the transaction of business in Missouri and its alleged defective clinical trial data constitutes tortious activity in Missouri. Bayer does not contest that this court has personal jurisdiction over it regarding the Missouri plaintiffs, but asserts there is no connection between its interactions with the non-Missouri plaintiffs and Missouri. Plaintiffs counter that Bayer's contacts with Missouri are sufficient to satisfy due process, including conducting clinical trials and studies of Essure in Missouri; working on regulatory approval of Essure in Missouri; and St. Louis, Missouri being one of the first U.S. cities to see Essure marketing and the first U.S. city to commercially offer Essure. In making their arguments, both parties cite to and rely on the recent Supreme Court decision in *Bristol-Myers Squibb*.

In *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, 137 S.Ct. 1773 (2017), more than 600 plaintiffs brought suit in California state court against pharmaceutical company defendant BMS, alleging damage to their health from the drug Plavix. Eighty-six of the plaintiffs were California residents and the remaining 592 plaintiffs were residents of 33 other states. *Id.* at 1778. BMS was incorporated in Delaware with substantial operations in New York and New Jersey. The non-California plaintiffs did not allege that they obtained Plavix in California, suffered injury in California, or received treatment for their injuries in California. BMS sold Plavix in California and engaged in some business activities

– 9 –

within the state, including running five research laboratory facilities which employed around 160 employees, employing around 250 sales representatives, maintaining a small advocacy office, and contracting with a California company for the distribution of Plavix on a nationwide basis. *Id*. at 1778, 1783.

The Supreme Court reversed the California Supreme Court's finding of specific jurisdiction, holding that the California court's exercise of jurisdiction over BMS violated due process. *Id*. at 1781-84. In a "straightforward application" of the "settled principles of personal jurisdiction," the Court focused on the need for an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id*. at 1781(*quoting Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)), 1783. The Court reiterated that it is not enough for a defendant to have general connections with the forum – there must be a connection between the forum and the specific claims at issue. *Id*. at 1781. The Court found the connection between the California forum and the nonresident plaintiffs too weak for a California court to claim specific jurisdiction. *Id*. at 1782.[2]

---

[2] A few months before the Supreme Court's ruling in *Bristol-Myers Squibb*, the Missouri Supreme Court considered a similar issue in *State ex rel. Norfolk Southern Railway Co. v. Dolan*, 512 S.W.3d 41(Mo. 2017) (en banc). In *Norfolk Southern*, the Missouri court concluded that there was neither general nor specific jurisdiction over defendant Norfolk, a Virginia corporation, when Norfolk was sued for personal injuries in Missouri by an Indiana-resident plaintiff, where the injuries occurred in Indiana and resulted from plaintiff's work for the railway in Indiana. *Id.* at 44-46. The Missouri court applied the *Daimler* principles underlying jurisdiction and found no personal jurisdiction in Missouri because the railroad was not at home

– 10 –

In discussing the background facts in *Bristol-Myers Squibb*, the Court noted that "[Bristol-Myers Squibb] did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." 137 S.Ct. at 1778. Plaintiffs here suggest the Supreme Court offered these factors as a blueprint for establishing personal jurisdiction over a nonresident plaintiff's claims. Plaintiffs contend they have established a *prima facie* case for personal jurisdiction based on Bayer's regulatory and marketing activity in Missouri and should be permitted to conduct discovery to prove the contacts necessary to sustain jurisdiction in this case. *See* ECF No. 23.

Even assuming that discovery would prove exactly what plaintiffs contend happened in Missouri with respect to Essure marketing and clinical trials, the individual plaintiffs' claims are too attenuated from those activities to provide specific, case-linked personal jurisdiction. "[T]he very controversy that establishes jurisdiction" here is that the plaintiffs "all allege similar injuries related to the implantation of Defendants' medical device." *Goodyear*, 564 U.S. at 919; ECF No. 20 at 1. The injury claims of the non-Missouri plaintiffs lack an adequate connection to Bayer's activities in Missouri for specific jurisdiction. The non-

---

in Missouri and the plaintiff's personal injury did not arise out of, or relate to, Norfolk's activities in Missouri. *Id.* at 49.

Missouri plaintiffs were not prescribed Essure in Missouri, they did not have the device implanted in Missouri, and they were not injured in Missouri.

According to plaintiffs, Missouri was one of eight sites for Essure clinical trials; for one relevant trial, less than 10% of the study participants were in Missouri. ECF No. 20-1 ¶ 30, 34.[3] According to Bayer, the clinical trials relied on by plaintiffs were just four of twenty-seven trials across the country. ECF No. 32 at 8 (*citing State ex rel. Bayer Corp. v. Moriarty*, No. SC96189, 2017 WL 6460354, at *6 (Mo. Dec. 19, 2017)). Plaintiffs' allege that Bayer "wrongfully concealed and misrepresented data," "withheld" information from physicians prescribing Essure, and "distributed defective data." However, these accusations are not directed at the Missouri physicians or facilities that conducted Essure studies and trials – and no such parties are named in this suit. These are accusations made against Bayer – a large corporation that conducts business in many states in order to progress a medical device through research, development, manufacturing, approval, marketing, sales, and eventually implantation. Nor are these accusations solely focused on data collected in Missouri. The conduct giving rise to these claims "occurred elsewhere." *Bristol-Myers Squibb*, 137 S.Ct. at 1782. The non-Missouri plaintiffs do not allege to have taken part in Missouri

---

[3] The affidavit of plaintiffs' regulatory expert – supporting their argument that the clinical trial activity in Missouri was critical to the approval of Essure – has not been "completely ignored," as plaintiffs allege previous decisions by Judges of this district have done. *See* ECF No. 20 at 26. However, the opinion of an expert on FDA regulations is not dispositive of these legal issues of jurisdiction.

clinical trials nor do they allege to have personally reviewed or relied on the resulting data.[4] *See also Roland v. Janssen Research & Dev., LLC*, No. 3:17-cv-00757-DRH, 2017 WL 4224037, at *4 (S.D. Ill. Sept. 22, 2017) (holding clinical trials in the forum state that allegedly helped form the foundation for the FDA application were not enough to establish personal jurisdiction over claims of non-resident plaintiffs who did not use the drug, were not prescribed the drug, and were not injured by the drug in the forum state).

Similarly, even though some of the marketing development for Essure took place in Missouri and a Missouri city was one of the first to be exposed to the nationwide Essure sales and marketing campaign, this has no connection to the non-Missouri plaintiffs' claims where they do not allege to have seen Essure marketing in Missouri. The language contained in the background section of *Bristol-Myers Squibb* does not authorize a federal court to exercise broad personal jurisdiction on the mere basis of nationwide contacts – such as the development of a marketing strategy – rather than the defendant's contacts within the forum state itself. Marketing activities in Missouri do not provide an "adequate link" between

---

[4] Although non-Missouri plaintiffs argue that their prescribing physicians relied on Essure clinical data and the promotion of Essure by Missouri physicians when deciding to recommend Essure to their patients, these physicians are not parties in this case and there is no indication that their reliance occurred in Missouri. Again, the conduct giving rise to these claims "occurred elsewhere." *Bristol-Myers Squibb*, 137 S.Ct. at 1782.

– 13 –

Missouri and the non-Missouri plaintiffs' specific claims against Bayer. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

As the Supreme Court reiterated in *Bristol-Myers Squibb*, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." 137 S.Ct. at 1781 (*quoting Goodyear*, 564 U.S. at 919). The non-Missouri plaintiffs here do not allege to have seen Essure marketing in Missouri, did not participate in Missouri clinical trials, did not review or rely on Missouri trial data, did not have Essure implanted in Missouri, and did not suffer an injury from Essure in Missouri. The claims of the non-Missouri plaintiffs lack a sufficient case-linked connection to Bayer's activities in Missouri to satisfy the due process requirements of the Fourteenth Amendment. I will grant Bayer's motion to dismiss the ninety-five non-Missouri plaintiffs from this action. As complete diversity of citizenship exists between Bayer and the remaining three Missouri-citizen plaintiffs, I will deny plaintiffs' motion to remand.

However, Bayer also argues in support of its motion to dismiss that the entire complaint should be dismissed under the doctrine of *forum non conveniens*, because the claims are preempted by federal law, and because plaintiffs fail to plead a plausible claim for relief. I will grant plaintiffs' motion for an extension of

time to respond to these additional dismissal arguments before the motion is fully adjudicated.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#10] is **GRANTED in part** with respect to personal jurisdiction and held in abeyance with respect to *forum non conveniens*, federal preemption, and failure to plead a plausible claim. The claims of all plaintiffs other than Alecia Moore, Norma Rhymes, and Katey Headley are dismissed without prejudice for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that plaintiffs' motion to remand [#26] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to sever [#15] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiffs' motion for an extension of time to respond to the dismissal issues except personal jurisdiction [#21] is **GRANTED**. The three remaining plaintiffs shall have until **September 12, 2018** to file a response to defendants' motion to dismiss. Any reply shall be filed no later than **September 21, 2018**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for jurisdictional discovery [#23] is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file sur-reply [#42] is **GRANTED**. These arguments were considered in issuing this Order.

**IT IS FINALLY ORDERED** that plaintiffs' motion for hearing [#43] is **DENIED**.

                                                                               _____
                                                                               CATHERINE D. PERRY
                                                                               UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2018.